IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

ROBERT WALL, #13965-052                                    PLAINTIFF

versus                              CIVIL ACTION NO. 5:08cv274-DCB-MTP

UNKNOWN BLACK, et al.                                    DEFENDANTS

<u>REPORT AND RECOMMENDATION</u>

THIS MATTER is before the court on a Motion to Dismiss or, in the Alternative, Motion

for Summary Judgment [20] filed by Defendants and a Motion for Summary Judgment [22] filed

by Plaintiff.  Having reviewed the submissions of the parties, the entire record in this matter and

the applicable law, the undersigned recommends that Plaintiff's Motion for Summary Judgment

[22] be denied, that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary

Judgment [20] be granted, and that Plaintiff's claims be dismissed with prejudice.

FACTUAL BACKGROUND

Plaintiff Robert Wall[1] is a federal inmate currently incarcerated at the Federal

Correctional Complex in Yazoo City, Mississippi ("FCC Yazoo City"), serving a 120-month

sentence on a conviction for possession of child pornography.  Plaintiff is projected to be

released from Bureau of Prisons (BOP) custody on June 2, 2016.  *See* Exhs. 1 & 2 to Defs'

Motion for Summary Judgment.

Plaintiff filed his *Bivens*[2] Complaint [1] on September 5, 2008, asserting various claims

---

[1] The Complaint identifies Wall as "assignee for Frederick Banks."  However, by Order
[7] dated October 10, 2008, the court found that "the only real party in this civil action is Robert
Wall" and dismissed Banks from the action.

[2] *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388
(1971).  A *Bivens* action mirrors a civil rights action brought under 42 U.S.C. § 1983, the
difference being that a *Bivens* action applies to alleged constitutional violations by federal actors,
while a section 1983 action applies to alleged constitutional violations by state actors.  *See Izen v.
Catalina*, 398 F.3d 363, 367 n.3 (5th Cir. 2005).

against the following Defendants in their individual capacities:[3] 1) Robert B. Black, Vocational Training Instructor at FCC Yazoo City; 2) Phillip C. Jackson, a counselor at FCC Yazoo City; 3) Bruce Pearson, Warden at FCC Yazoo City; 4) Matthew J. Dalton, a Case Management Coordinator at FCC Yazoo City; 5) Katon L. Varnado, a Counselor at FCC Yazoo City; 6) Julie Southerland, a Unit Manager at FCC Yazoo City; 7) Rose M. Smith, a Senior Officer Specialist at FCC Yazoo City; 8) David C. Holston, Supervisory Chaplain at FCC Yazoo City; 9) Gerard M. Bratcher, Supervisor of Education at FCC Yazoo City; and 10) Harley G. Lappin, Director of the BOP. Plaintiff alleges the following in his Complaint [1], Supplement [5] to Complaint, Supplemental Pleading [12] to Complaint, and Second Supplemental Additions [17] to Complaint:

> 1) Defendants Lappin, Black, Pearson and Bratcher cancelled his Lexis-Nexis account at the prison law library, in an attempt to interfere with the filing of a post-conviction motion, in violation of Plaintiff's Fifth and Sixth Amendment rights (Complaint Count I), and that it was a violation of the "Privacy Act" for Black to cancel his account (Complaint Count VIII).

> 2) Defendant Smith unlawfully and "negligent[ly]" confiscated his shower shoes during a unit inspection and never returned them to him, thereby forcing Plaintiff to take showers barefoot and stand on black mold, in violation of Plaintiff's rights under 8 U.S.C. § 1401 and the Fourth Amendment (Complaint Count II);

> 3) Defendants Lappin, Holston and Pearson refused to provide Plaintiff with equal access to the chapel for religious services, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*, and they denied his request "for Land for Religious Use so that he could build a pyramid temple as required by his Thelema religion,"[4] even though "the Native Americans were provided with land

---

[3] "[A] *Bivens* action may be maintained against a defendant only in his or her individual capacity, and not in his or her official capacity." *Pollack v. Meese*, 737 F. Supp. 663, 666 (D. D.C. 1990); *see also Gibson v. Federal Bureau of Prisons*, 121 Fed. Appx. 549, 551 (5th Cir. Dec. 30, 2004).

[4] The Thelema religion, founded by Aleister Crowley in the early 20th century, is based upon the philosophy "'Do what thou wilt.'" This philosophy is traced back to Francois Rebelais, a Franciscan and later Benedictine monk of the 16th century. Modern Thelema is a syncretic

for religious use and built a sweat lodge" (Complaint Count III and Supp. [5]);

4) Defendants Southerland, Varnado and Jackson confiscated his legal papers (pertaining to a post-conviction motion) and did not return them, again in violation of 8 U.S.C. § 1401 and the Fourth Amendment, and Defendants Lappin and Pearson "personally authorized" these actions (Complaint Count IV);

5) Defendant Dalton "obstructed" a phone call between Plaintiff and his attorney by "heckling him" and talking to him while he was on the phone, and Defendant Jackson refused to allow Plaintiff to make a legal call, in violation of due process and his First Amendment right to privacy (Complaint Count V);

6) Defendant Jackson refused to provide paper and envelopes to Plaintiff so that he could pursue legal actions, in violation of Plaintiff's due process and Sixth Amendment rights, and he provided these items to other inmates "of different classes," thereby violating Plaintiff's Equal Protection rights (Complaint Count VI);

7) Defendants Jackson, Randle, Dalton and Pearson "removed the plugs from the units and otherwise plugged them up so that [Plaintiff] could not plug in a fan then they turned off the air conditioning to heat up the unit to a boiling degree. Once [Plaintiff] was asleep and above the covers they suddenly turned on the air conditioning full blast, this continuous change in temperature night after night caused black mold spores to be released from the uncleaned vents infecting [Plaintiff] with a deep bloody cough that was never treated in violation of the Eighth Amendment" (Complaint Count VII);

8) Defendants Lappin and Black refused to provide records that Plaintiff had requested under the Privacy Act (Complaint Count VIII);

9) Unidentified "Defendants and supplemental Defendants" opened and copied his incoming legal mail in violation of due process and his constitutional right to privacy, as well as his right to legal access (Supp. Pleading [12] Count 1);

10) Defendant Bender "cancelled and obstructed a movie performance, refused to answer a cop out requesting Indie Rock music entertainment as a DJ night and did not otherwise provide the requested music while allowing other inmates and providing 'hip hop and R & B' music," and Defendant Richardson[5] "failed to hold a promised band meeting to review the claims and possibly restart the band."  As such, Plaintiff claims he was discriminated against on the basis of his religion, in violation of his due process and equal protection rights (Supp. Pleading [12] Count 2); and

---

philosophy and religion, containing elements of numerous philosophical and religious traditions. *See* http://en.wikipedia.org/wiki/Thelema (Exh. 6 to Defs' Motion for Summary Judgment).

[5] There are no Defendants by these names in this action.

11) Defendants Jackson and Dalton intercepted and monitored Plaintiff's legal telephone calls, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1968, 18 U.S.C. § 2510, *et seq.* (Second Supp. Addition [17] to Complaint at ¶ 2).

As relief, Plaintiff seeks compensatory and punitive damages as well as injunctive relief.[6]  *See* Complaint at 3-4; Supp. [5] at 1-2; Supp. Pleading [12] at 1-2; Second Supp. Addition [17] at 1.

STANDARD FOR SUMMARY JUDGMENT[7]

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Summary judgment is proper "where a party fails to establish the existence of an element essential to his case and on which he bears the burden of proof." *Washington v. Armstrong World Indus.*, 839 F.2d 1121, 1122 (5th Cir. 1988).  "A complete failure of proof on an essential element renders all other facts immaterial because there is no longer a genuine issue of material fact." *Id.*

This court may grant summary judgment only if, viewing the facts in a light most favorable to the plaintiff, the defendant demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law.  *Woods v. Smith,* 60 F.3d 1161, 1164 (5th Cir. 1995).  If the defendant fails to discharge the burden of showing the absence of a

---

[6] In the Complaint, Plaintiff also requested mandamus relief in the form of an order "presenting evidence of Defendant's unconstitutional actions to a grand jury by the U.S. Attorney or for the court to present said evidence."  *See* Complaint Count VIII.  This court has already dismissed with prejudice [7] the writ of mandamus portion of Plaintiff's cause of action.

[7] Because Defendants have submitted matters outside the pleadings with their Motion to Dismiss or, in the Alternative, for Summary Judgment [93], the motion should be characterized as a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b); *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991).

genuine issue concerning any material fact, summary judgment must be denied. *John v. State of Louisiana,* 757 F.2d 698, 708 (5th Cir. 1985). The existence of an issue of material fact is a question of law that this court must decide, and in making that decision, it must "draw inferences most favorable to the party opposing the motion, and take care that no party will be improperly deprived of a trial of disputed factual issues." *Id.* at 712 (quoting *U.S. Steel Corp. v. Darby*, 516 F.2d 961, 963 (5th Cir. 1975)).

There must, however, be adequate proof in the record showing a real controversy regarding material facts. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Thus, "[c]onclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 902 (1990), unsubstantiated assertions, *Hopper v. Frank*, 16 F.3d 92, 96-97 (5th Cir. 1994), or the presence of a "scintilla of evidence," *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994), is not enough to create a real controversy regarding material facts. In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

## ANALYSIS

### Failure to Exhaust Administrative Remedies

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires prisoners to exhaust any available administrative remedies prior to filing suit under 42 U.S.C. § 1983 or "any other Federal law." Accordingly, federal prisoners filing suit under *Bivens* "must first exhaust inmate grievance procedures just as state prisoners must exhaust administrative processes prior to instituting a § 1983 suit." *Porter v. Russels*, 534 U.S. 516, 524 (2002); *see also Schipke v. Van Buren*, 239 Fed. Appx. 85, 86 (5th Cir. Aug. 30, 2007). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in

court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citations omitted).[8]

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action." *Schipke*, 239 Fed. Appx. at 86 (quoting *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir.1994)). The Fifth Circuit has taken the position that exceptions to the exhaustion requirement only apply in "extraordinary circumstances," and the prisoner bears the burden of demonstrating the futility or unavailability of administrative review. *Id.*

As an initial matter, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. This argument does appear to have merit, as there are no administrative remedy filings in the BOP's records regarding Plaintiff's claims in the instant action. *See* Exh. 12 to Defs' Motion for Summary Judgment; Exh. 5 to Defs' Reply [27]. In an effort to excuse his failure to exhaust, Plaintiff argues that Defendants Jackson, Dalton, Randle and Southerland refused to give him administrative remedy forms. Plaintiff claims that he approached Dalton, Randle and Southerland for forms, but they told him he needed to get them from Jackson who, according to Plaintiff, provided him with only one remedy form (which he used to complain about the alleged confiscation of his shower shoes). Plaintiff also claims that Jackson would not authorize any extensions of time.[9] *See* Complaint at 1; Second Supp.

_____

[8] The BOP's Administrative Remedy Program ("ARP") is set forth at 28 C.F.R. § 542.10, *et seq.* The first step of the ARP process is the informal presentation of the issue to prison staff. If that does not resolve the issue, the inmate must submit a formal Request for Administrative Remedy. If the inmate is not satisfied with the warden's response to that request, he or she may submit an appeal to the appropriate BOP regional director, and may then appeal that decision to the General Counsel. That step "is the final administrative appeal" and its completion, therefore, constitutes exhaustion of administrative remedies.

[9] Defendant Randle does not remember Plaintiff asking him for administrative remedy forms. *See* Declaration of Larry D. Randle (Exh. 30 to Defs' Motion for Summary Judgment) ¶ 4. At any rate, as Defendants Randle and Dalton explain, the procedure for an inmate to obtain administrative remedy forms is to get them from the counselor. Thus, if Plaintiff did ask them

6

Addition to Complaint at 1; Declaration of Robert Wall [24] ¶ 7; Reply [28] to Southerland Decl.

It is true that "[i]f the institutional authorities refuse to provide a prisoner with the forms needed to exhaust administrative remedies, then those remedies are not 'available' to the prisoner." *Aceves v. Swanson*, 75 Fed. Appx. 295, 296 (5th Cir. Sept. 17, 2003). However, a prisoner's claim that prison officials denied him administrative remedy forms does not automatically defeat summary judgment on the issue of exhaustion. As with any other issue, the nonmovant must present "sufficiently specific facts," not bald, conclusory assertions. *See*, *e.g.*, *Dye v. Bartow*, 2007 WL 3306771, at * 6 (E.D. Wis. Nov. 6, 2007) (citing *Dale v. Lappin*, 376 F.3d 652 (7th Cir. 2004)), *aff'd*, 282 Fed. Appx. 434 (7th Cir. June 12, 2008). Such "sufficiently specific facts" include the following: identification of the prison employee(s) from whom Plaintiff requested forms; identification of the specific form(s) requested; the date the alleged requests were made; evidence detailing the prison officials' response(s) to his alleged request(s); and evidence detailing complaints of denial. *Id.*

In the instant case, Plaintiff does not provide details about the forms he allegedly requested, the dates such alleged requests were made, or the responses to his requests. Moreover, he does not provide any evidence that he made efforts to complain about the denial.[10]

---

for forms, they would have referred him to his counselor (Jackson). *See id.*; Declaration of Matthew J. Dalton (Exh. 23 to Defs' Motion for Summary Judgment) ¶ 5. Defendant Jackson denies Plaintiff's allegations and stated that he has given Plaintiff administrative remedy forms when he has asked for them. *See* Jackson Decl. ¶ 8. Jackson also avers that he has not denied Plaintiff an extension of time for filing an administrative remedy. Indeed, according to Mr. Jackson, Counselors such as himself do not authorize such extensions; rather, these decisions are made by the Administrative Remedy Coordinator. *See id.*

[10] Indeed, Mr. Dalton avers that when he was Acting Unit Manager over Plaintiff's living unit, he was never told by Plaintiff that his Counselor (Jackson) would not give him administrative remedy forms. *See* Dalton Decl. ¶ 5. In addition, Ms. Southerland, the Unit Manager, avers that Plaintiff has not complained to him about this either. *See* Supplemental Declaration of Julie L. Southerland (Exh. 6 to Defs' Reply) ¶ 6.

Thus, Plaintiff's claim that he was denied administrative remedy forms is not supported by sufficient evidence. Nevertheless, as the court finds below that Defendants are entitled to summary judgment on Plaintiff's claims on their merits, the issue of exhaustion is rendered moot.

Claims Against Defendant Lappin - Lack of Personal Jurisdiction

Defendants argue that Plaintiff has failed to establish that Defendant Lappin has sufficient "minimum contacts" with Mississippi and, therefore, he should be dismissed for lack of personal jurisdiction. Mr. Lappin, Director of the BOP, is employed at the BOP's Central Office in Washington, D.C. He does not reside, work or own real property in the state of Mississippi. *See* Declaration of Harley G. Lappin (Exh. 29 to Defs' Motion for Summary Judgment) ¶¶ 1-2.

Mr. Lappin denies having any personal involvement in any of Plaintiff's claims and avers that his only involvement with respect to Plaintiff is "perhaps issuing various Bureau of Prisons rules and regulations which guide staff in administering Bureau of Prisons institutions, which subordinate staff may have referred to in performing their duties."[11] *See* Lappin Decl. ¶¶ 4-5. Mr. Lappin avers that "[a]ny action of [his] that might bear on the plaintiff's allegations would have been undertaken as part of [his] official duties." *See id.* ¶7. In his role as Director of the BOP, Mr. Lappin "rel[ies] on members of the [BOP] staff who are located on-site at [BOP] institutions...to provide direct supervision, care, custody and treatment for inmates," as well as "staff at the Central Office and at Regional Offices...who perform monitoring and reviews of institution level operations...." *See id.* ¶ 3.

In order for this court to exercise personal jurisdiction over Lappin, a non-resident,

---

[11] This is indeed what Plaintiff appears to be alleging. In his Declaration, he states that "Lappin was indeed personally involved because it was his de facto policy that he created which was being implemented by defendants including Lappin." *See* Declaration ¶ 14.

Plaintiff must show that he purposely directed activities towards Mississippi or purposely availed himself of the privileges of conducting activities here, and that the cause of action arises out of or results from Lappin's forum-related contacts. *Nuovo Pignone, v. Storman Asia M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)). Plaintiff argues that "[b]ecause Defendant Lappin through telephone calls, emails, letters and business and personal visits to FCC Yazoo City has sufficient personal contacts with Mississippi, this court may exercise jurisdiction over him." *See* Plaintiff's Response [22] to Defs' Motion for Summary Judgment at 8; *see also* Wall Decl. at 14 ("Lappin contacts Yazoo via email, telephone and letters. I have personally known that last year he came to Yazoo City....") However, Plaintiff does not allege or establish that his claims in the instant cause of action arise out of, or result from, those alleged contacts and, therefore, has failed to establish that this court may exercise personal jurisdiction over Mr. Lappin. *See Nuovo Pignone,* 310 F.3d at 378 (citing *Burger King*, 471 U.S. at 474).

Moreover, courts have held that mere allegations relating to a BOP official's supervisory activities over a facility inside the forum state are insufficient to establish personal jurisdiction. *See Murrell v. Chandler*, 2007 WL 869568, at * 4 (E.D. Tex. Mar. 21, 2007) (granting defendants' motion to dismiss BOP's Administrator of National Inmate Appeals, located in Washington, D.C., for lack of personal jurisdiction, stating that "plaintiff's allegations that [defendant] decided his administrative appeals outside the state of Texas is not sufficient contact to support a finding of personal jurisdiction"); *Jones v. Hawk-Sawyer*, 2000 WL 34203850, at * 2 (N.D. Tex. Oct. 19, 2000) (dismissing claim against director of BOP because "[p]laintiff's allegations that [defendant] decided two administrative appeals outside the state of Texas and his conclusory allegations of conspiracy are not sufficient contact to support a finding of personal jurisdiction"); *see also Hill v. Pugh*, 75 Fed. Appx. 715, 719 (10th Cir. Sept. 11, 2003) (dismissing claims against BOP Director for lack of personal jurisdiction, holding that it was

"not reasonable to suggest that federal prison officials may be hauled into court simply because they have regional and national supervisory responsibilities over facilities within a forum state [Colorado]"); *Johnson v. Rardin*, 1992 WL 9019, at * 1 (10th Cir. Jan. 17, 1992) (dismissing BOP Director for lack of minimum contacts where his only involvement was reviewing inmate's appeals and occasionally advising prison staff members in forum state); *Durham v. Lappin*, 2006 WL 2724091, at * 5 (D. Colo. Sept. 21, 2006) (dismissing claim against BOP Director, National Inmate Appeals Administrator and BOP Regional Director, holding that their contacts with the forum state "were completely fortuitous, resulting from the fact that the Plaintiff-to whom they were responding when answering grievances-was located in Colorado"); *Thornton v. Quinlan*, 864 F.Supp. 90, 92 (S.D. Ill. 1994) (declining to exercise jurisdiction over director of BOP whose only contacts with Illinois were in his official capacity).

The court finds persuasive the reasoning set forth in the case law cited above. The fact that Mr. Lappin, in his official capacity, sets policy for the BOP and its various institutions and has overall supervisory authority over BOP staff as part of his responsibilities as the BOP Director, are insufficient to establish personal jurisdiction. Nevertheless, as set forth *infra*, Plaintiff's claims against Defendant Lappin (and the other Defendants) lack merit and, therefore, should be dismissed with prejudice.

Cancellation of Plaintiff's Lexis-Nexis Account

Plaintiff alleges that Defendants Lappin, Black, Pearson and Bratcher cancelled his Lexis-Nexis account at the prison law library, in an attempt to interfere with the filing of a post-conviction motion, in violation of Plaintiff's Fifth and Sixth Amendment rights, and that it was a violation of the "Privacy Act" for Black to cancel his account. *See* Complaint Counts I and VIII.

There is no *respondeat superior* liability in *Bivens* actions. *Cronn v. Buffington*, 150 F.3d 538, 544 (5th Cir. 1998). Thus, in order to be liable, a prison official must either be

personally involved in the acts that caused the constitutional deprivation, or must "implement a policy so deficient that the policy itself acts as a deprivation of constitutional rights." *Id.* The record before the court demonstrates that neither Director Lappin nor Warden Pearson had any personal involvement in the cancellation of Plaintiff's Lexis-Nexis account. Warden Pearson is "responsible for the general supervisory management and oversight of the operation of the entire complex" at FCC Yazoo City, and relies on the staff of the Education Department to provide access to legal research materials to inmates, and to manage their use of the electronic law library ("ELL"). *See* Declaration of Bruce Pearson (Exh. 22 to Defs' Motion for Summary Judgment) ¶¶ 2-3. Likewise, Director Lappin relies on members of BOP staff in the various correctional facilities to provide direct supervision and care for inmates in accordance with BOP policy. *See* Lappin Decl. ¶ 3. Both Lappin and Pearson explicitly deny any personal involvement in the decision to cancel Plaintiff's Lexis-Nexis account. *See* Pearson Decl. ¶ 3; Lappin Decl. ¶ 5. In addition, Plaintiff has not demonstrated, much less alleged, that either Director Lappin or Warden Pearson implemented a constitutionally deficient policy.[12] At any rate, Plaintiff's claim fails as a matter of law against all of the Defendants, including Lappin and Pearson, for the reasons set forth below.

The touchstone of a claim of denial of access to the courts is whether inmates have "a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions." *Lewis*, 518 U.S. at 356-57. Thus, Plaintiff must show not that the law library was somehow inadequate or deficient in a theoretical sense, but must show that he was, in fact, deprived of access to the courts. "[T]he Constitution does not require that prisoners (literate or

---

[12] *See* Exh. 4 to Defs' Motion for Summary Judgment (BOP Program Statement (PS) 1315.07, "Legal Activities, Inmate") (setting forth the BOP's policy of providing inmates with "reasonable access to legal materials and counsel, and reasonable opportunity to prepare legal documents" and requires wardens to "establish an inmate law library, and procedures for access to legal reference materials and to legal counsel, and for preparation of legal documents.").

illiterate) be able to conduct generalized research, but only that they be able to present their grievances to the courts - a more limited capability that can be produced by a much more limited degree of legal assistance." *Id.* at 359; *see also Jones v. Greininger*, 188 F.3d 322, 325 (5th Cir. 1999) ("The right of access to the court 'does not afford prisoners unlimited access to prison law libraries.'") (citation omitted).

Moreover, in order to prevail on a denial of legal access claim, Plaintiff must show an "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Lewis v. Casey*, 518 U.S. 343, 349-51 (1996) (citation omitted); s*ee also Donnelly v. Edwards*, 95 Fed. Appx. 702, 703 (5th Cir. Apr. 23, 2004) (upholding dismissal of access-to-the-courts claim where plaintiff did not establish that he was unable to proceed in a case as a result of alleged delays and denials of legal assistance); *Cartner v. Lowndes Cty.*, 89 Fed. Appx. 439, 442 (5th Cir. Jan. 23, 2004), *cert. denied*, 542 U.S. 923 (2004) (affirming dismissal of access-to-the-courts claim where plaintiff failed to explain "how his position as a litigant was adversely affected"); *Richards v. Johnson*, 115 Fed. Appx. 677 (5th Cir. Oct. 20, 2004) (upholding dismissal of access-to-the-courts claim where plaintiff "alleged no fact showing that he has been prejudiced in his ability to prepare and transmit a necessary legal document to a court.").

Plaintiff has failed to make this showing. In response to Defendants' Motion for Summary Judgment, Plaintiff alleges that because of his restriction from the ELL and cancellation of his Lexis-Nexis account, and because the main law library does not have many of the books he needs in order to conduct legal research, he was denied legal access. *See* Plaintiff's Response to Motion for Summary Judgment [22] at 2. Such general complaints about the alleged deficiencies of the law library are clearly not sufficient to establish a constitutional violation, under the above-cited authorities.

Plaintiff further alleges that as a result of his lack of access to the ELL, he was unable to

prosecute his section 2255 motion. *See* Plaintiff's Response [22] at 6. The court has reviewed the Decision and Order on Plaintiff's section 2255 motion (2008 WL 3049948 (N.D.N.Y. Aug. 1, 2008)) (Exh. 1 to Defs' Reply [27]). In his section 2255 motion, Plaintiff raised seven separate claims of ineffective assistance of counsel,[13] a claim of actual innocence, a claim that the court lacked jurisdiction because the indictment did not name the victims of the crime, a claim that the forfeiture count was defective, and a claim that his sentence constitutes cruel and unusual punishment under the Eighth Amendment. *See* Exh. 1 to Defs' Reply. Thus, Plaintiff was able to file his section 2255 motion and raise and argue numerous grounds for relief, despite his alleged lack of access to the ELL and the alleged shortcomings of the law library at Yazoo City.[14] Plaintiff does not provide any specificity about how he was allegedly unable to prosecute the section 2255 motion and the mere fact that his motion was denied is not enough to establish the requisite prejudice. Accordingly, Defendants are entitled to summary judgment on this claim.

In addition, to the extent that Plaintiff is claiming that his due process rights were violated by the cancellation of his Lexis-Nexis account, such a claim is unavailing. "[T]he Due Process Clause does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2297 (1995)). Rather, the liberty interests

---

[13] Specifically, Plaintiff argued that his counsel was ineffective for failing to: 1) appeal; 2) file a motion to suppress the fruits of a warrantless search; 3) file a motion to dismiss the indictment; 4) discuss the addendum to the Pre-Sentence Report with Plaintiff and object to the addendum; 5) file a motion to suppress allegedly coerced statements; 6) properly advise Plaintiff that he would receive a term of incarceration (rather than a 10-year period of probation) if he pled guilty; and 7) object to Plaintiff not being given an opportunity to address the court at sentencing. *See* Exh. 1 to Defs' Reply.

[14] Indeed, Plaintiff made numerous other filings after his ELL access was disabled. *See* Exh. 2 to Defs' Reply. Moreover, since that time, Plaintiff has filed at least six other lawsuits, in addition to the instant lawsuit. *See* Exh. 4 to Defs' Reply. These facts belie Plaintiff's allegation of denial of legal access.

which are protected by the Due Process Clause "are generally limited to state created regulations or statutes which affect the quantity of time rather than the quality of time served by a prisoner." *Id.* (citing *Sandin*, 115 S.Ct. at 2297); *see also Thompson v. Cockrell*, 263 F.3d 423, 425 (5th Cir. 2001) ("Only those state-created substantive interests that 'inevitably affect the duration of [a prisoner's] sentence' may qualify for constitutional protection") (citing *Sandin*, 515 U.S. at 484) (brackets in original); *Orellana v. Kyle*, 65 F.3d 29, 31-32 (5th Cir. 1995) (stating that after *Sandin*, "it is difficult to see that any other deprivations in the prison context, short of those that clearly impinge on the duration of confinement, will henceforth qualify for constitutional 'liberty' status."). Thus, Plaintiff's due process rights were not implicated by the loss of access to his Lexis-Nexis account or the ELL, as these are not constitutionally-protected liberty interests.

Moreover, there appears to have been ample justification for terminating Plaintiff's Lexis-Nexis account. On February 12, 2008, Defendant Black advised Plaintiff in writing of the rules for accessing the ELL for legal research - specifically, that inmates could not use the computers "for personal needs, such as correspondence or legal work, other than the use of the Lexis Nexis search function and the printing of the search results." *See* Exh. 3 to Defs' Motion for Summary Judgment; *see also* Declaration of Robert B. Black (Exh. 20 to Defs' Motion for Summary Judgment) ¶ 2; Declaration of Gerard D. Bratcher (Exh. 28 to Defs' Motion for Summary Judgment) ¶ 2. Plaintiff signed the document stating: "I have read the rights and responsibilities of inmate computer access and do acknowledge that my supervisor has reviewed this information with me. I do understand that I am subject to disciplinary action (which can include, but is not limited to: denial of inmate computer use) if I violate policy."[15] *See* Exh. 3 to

---

[15] Plaintiff denies that he was ever advised of these rules. *See* Plaintiff's Motion for Summary Judgment at 1; Wall Decl. at ¶¶ 2, 13. However, in opposing summary judgment, "[i]t is not enough for [Plaintiff] to rest on mere conclusory allegations or denials in his pleadings...[Plaintiff] must point out, with factual specificity, evidence demonstrating the

Defs' Motion for Summary Judgment.  Staff subsequently discovered that Plaintiff had created folders on the server, in violation of the computer use policy, and it was therefore determined that Plaintiff should be blocked from using the computer and that his ELL account should be disabled.  *See* Black Decl. ¶ 4.

Finally, Plaintiff also alleges that Defendant Black's cancellation of his Lexis-Nexis account constituted a violation of the Privacy Act.  *See* Complaint [1] Count VIII.  Black avers that he has "no information as to what inmate Wall is referring to" in reference to this claim.  *See* Black Decl. ¶ 5.  Although the court is unable to discern precisely what Plaintiff is alleging in this claim, it is clear that the Privacy Act, 5 U.S.C. §552a, does not provide a cause of action against individuals, only against government agencies.  *See Connelly v. Comptroller*, 876 F.2d 1209, 1215 (5th Cir. 1989) ("Congress has created no cause of action against individual government officials for violating the Privacy Act."); *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987) ("Neither the Freedom of Information Act nor the Privacy Act creates a cause of action for a suit against an individual employee of a federal agency.").

For the foregoing reasons, Defendants should be granted summary judgment on this claim.

Confiscation of Plaintiff's Shower Shoes

Plaintiff alleges that Defendant Smith unlawfully and "negligent[ly]" confiscated his shower shoes during a unit inspection and never returned them to him, thereby forcing Plaintiff to take showers barefoot and stand on black mold, in violation of Plaintiff's rights under 8 U.S.C. § 1401[16] and the Fourth Amendment.  *See* Complaint Count II.  In his Declaration [24],

---

existence of a genuine issue of material fact on every component of his case." *Park v. Stocksill Boat Rentals, Inc.*, 492 F.3d 600, 605 (5th Cir. 2007) (citations omitted).

[16] This statute governs who shall be nationals and citizens of the United States at birth. Plaintiff asserts in his Complaint, without explanation, that because he is an "Indian" this statute was violated as a result of the alleged confiscation of his shower shoes. *See* Complaint Count II.

Plaintiff also appears to be claiming that Defendant Jackson participated in the shakedown.

Mr. Jackson avers that in May 2008, he participated in a "shakedown search," along with other staff, of inmates' living quarters looking for excess institution clothing. To the best of his recollection, he did not confiscate any property, including slippers or legal papers, from Plaintiff. He avers that inmates whose property was confiscated (other than Government property) would have been issued a property confiscation form and could pursue return of their property through established procedures. *See* Jackson Decl. ¶ 3. Mr. Varnado avers that he participated with other staff in a "shakedown search" of Plaintiff's living unit in May 2008; however, he did not search Plaintiff's area nor did he confiscate any of Plaintiff's property. *See* Declaration of Katon L. Varnado (Exh. 24 to Defs' Motion for Summary Judgment) ¶ 2. Defendant Southerland, Unit Manager of the living unit where Plaintiff resides, explains that she and other staff conduct periodic "shakedown searches" of inmates' living areas, and when contraband items are found, they are confiscated until they can be reviewed by the appropriate staff and a decision can be made about how to proceed. *See* Declaration of Julie L. Southerland (Exh. 25 to Defs' Motion for Summary Judgment) ¶¶ 2-3. Ms. Southerland does not recall any search of Plaintiff's living area involving the confiscation of his slippers and legal papers. *See* Southerland Decl. ¶¶ 4-5. Defendant Smith has no recollection of confiscating Plaintiff's shower shoes, although she admits that she has participated in numerous shakedown searches of inmates' living units, and it is possible that she confiscated Plaintiff's shower shoes. However, Smith explains that if she did, it would have been because they had been altered and were therefore contraband.[17] *See* Declaration of Rose M. Smith (Exh. 26 to Defs' Motion for

In his Response [22] to Defs' Motion for Summary Judgment, Plaintiff explains that Defendants violated this statute because they "denied him access to his property as a Native American." *See* Response at 6.

[17] When shower shoes are purchased from the commissary, they are all plastic and either black or white. Inmates are required to maintain their shower shoes in this same condition;

Summary Judgment) ¶ 2. Smith also avers that around the time Plaintiff alleges his shower shoes were taken, she was performing weekly inspections of housing units and she saw no black mold in the shower areas. *See id.* ¶ 4.

Even if Plaintiff's allegations were true, this would be insufficient to establish a constitutional violation. First, the court cannot consider Plaintiff's claim of negligence, "because negligence is not the basis of a constitutional claim" under *Bivens*. *Banks v. Green*, 2007 WL 4370306, at * 2 (M.D. Pa. Dec. 11, 2007) (citing *Bivens*, 403 U.S. at 392), *reconsid. denied*, 2008 WL 170002 (M.D. Pa. Jan. 16, 2008).

In addition, it is well-established that random, unauthorized deprivations of property (whether negligent or intentional) by prison officials do not violate due process where there is an adequate post-deprivation remedy available. *Daniels v. Williams*, 474 U.S. 327 (1986); *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Plaintiff has not alleged that the deprivations were made in accordance with any policy, practice or custom or were in any other way "authorized." *See Smith v. Epps*, 2009 WL 1262424, at * 1 (5th Cir. May 8, 2009). Moreover, there is an adequate remedy available under the FTCA. *See Gordon v. Day*, 172 Fed. Appx. 565, 567 (5th Cir. Mar. 22, 2006); *see also Williams v. Morris*, 2008 WL 112106, at * 2 (E.D. Tex. Jan. 9, 2008) ("The Federal Tort Claims Act provides a federal inmate...with an adequate post-deprivation remedy."). In addition, the BOP grievance procedure itself provides an adequate post-deprivation remedy. *Williams*, 2008 WL 112106, at * 2 (citing *Phelps v. Winn*, 2007 WL 2872465 (D.Mass. Sept. 27, 2007); *Mendez v. FMC-Rochester*, 2007 WL 2320547 (D.Minn. Aug. 10, 2007); *Cyrus v. U.S.*, 2007 WL 80162 (M.D. Pa. Jan. 8, 2007)).

Finally, Plaintiff had both the opportunity and the resources to buy shower shoes at the

---

however, they will frequently alter the shoes by removing the plastic strap and replacing it with a leather or velcro strap. Once the shoes are altered in this manner, they are considered contraband and inmates are not allowed to possess them. *See* Smith Decl. ¶ 2; Exhs. 5 & 5A to Defs' Motion for Summary Judgment.

commissary and, in fact, purchased numerous other comparably-priced items during the relevant time period. *See* Exhs. 14, 15 & 16 to Defs' Motion for Summary Judgment. Indeed, records reflect that Plaintiff did buy a new pair of shower shoes on August 4, 2008. *See* Exh. 15 to Defs' Motion for Summary Judgment. Accordingly, even if his shower shoes were taken, Plaintiff cannot establish that he was "forced to take barefoot showers" as a result. For the foregoing reasons, Defendants are entitled to summary judgment on this claim.

Denial of Religious Services and Land for Religious Use

Plaintiff claims that Defendants Lappin, Holston and Pearson refused to provide Plaintiff with equal access to the chapel for religious services, in violation of the First Amendment, the Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000bb *et seq.* and the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc *et seq.*,[18] and they denied his request "for Land for Religious Use so that he could build a pyramid temple as required by his Thelema religion," even though "the Native Americans were provided with land for religious use and built a sweat lodge." *See* Complaint Count III and Supplement [5].

The BOP has an established procedure for inmates to formally request new or unfamiliar religious components, set forth in Program Statement P5360.09, Religious Beliefs and Practices, 8-9 (Exh. 7 to Defs' Motion for Summary Judgment);[19] *see also* Holston Decl. ¶ 2. There is no

---

[18] RFRA is the predecessor of RLUIPA. RFRA was struck down by the Supreme Court in *City of Boerne v. Flores*, 521 U.S. 507, 523-36 (1997). *See Longoria v. Dretke*, 507 F.3d 898, 902 (5th Cir. 2007). RLUIPA was enacted as a response to *City of Boerne*. *See id.* It provides that the government shall not "impose a substantial burden on the religious exercise of a person residing in or confined to an institution..." 42 U.S.C. § 2000cc-1(a).

[19] The inmate submits a written request (Form BP-S822, "New or Unfamiliar Religious Components Questionnaire"), along with supporting documentation, to the institution's chaplain. Where a decision cannot be reached locally, the request is then routed through the appropriate channels to a Religious Issues Committee ("RIC") at the BOP's Central Office. After the review is completed, the RIC makes a recommendation to the Warden, who then determines what the institution will do. Once the Warden makes the decision, the inmate can appeal through the ARP. *See* Holston Decl. ¶ 2; Exh. 7 to Defs' Motion for Summary Judgment.

indication in the record that Plaintiff ever used these procedures or asked these Defendants for such accommodations. Indeed, Defendant Holston, the Supervisory Chaplain, states that Plaintiff has not made any requests (whether verbal or via an Inmate Request to Staff form) to use the chapel for Thelema religious services, or for land to build a pyramid temple. Nor has Plaintiff submitted any such issues to the RIC for its review. *See* Declaration of David C. Holston (Exh. 27 to Defs' Motion for Summary Judgment) ¶ 4. Warden Pearson avers that he does not remember being presented with any request from Plaintiff for religious accommodations, nor does he recall ever being contacted by any chaplains or administrative staff regarding such issues.[20] *See* Pearson Decl. ¶ 4.

Thus, no decision has been made regarding the religious accommodations Plaintiff claims to be seeking.[21] *See* Holston Decl. ¶ 4. In response to Defendants' Motion for Summary Judgment, Plaintiff states that the reason he did not utilize the established procedures is because "Defendants failed to provide him with the New Religions Form to submit it." *See* Response [22] to Defs' Motion for Summary Judgment at 2. Plaintiff elaborated on this claim in his Declaration, stating that he "submitted multiple requests to Holston for the new religions form, but was never provided with the form." *See* Declaration [24] at ¶ 12. Plaintiff does not provide

---

[20] The court finds it interesting that after this case was filed, Plaintiff notified staff that he was a "Pagan" and BOP records were updated to reflect this on September 28, 2008. *See* Exh. 17 to Defs' Motion for Summary Judgment ("Inmate History - Religion"). Plaintiff apparently has attended Wicca religious services frequently (more than 25 times from May - November 2008). *See* Holston Decl. ¶ 3; *see also* Exh. 18 to Defs' Motion for Summary Judgment. Plaintiff's attempt to explain why he has been attending Wicca services fails to clarify the issue: "I only started attending Wicca because a fellow inmate, Banks, also a Thelemite informed me that a request he made for Thelemite services at the chapel and the unit was denied by Holston/Williams and the RIC based on a previous ruling by the RIC at a different institution. The Wicca service in no way comports with the tenants [sic] of my Thelemic faith." *See* Holston Decl. ¶ 12.

[21] *Cf. Banks v. Roberts*, 2006 WL 2060428, at * 1 (M.D. Pa. July 21, 2006) (noting that where Plaintiff's request for Thelema's The Book of the Law and for a plot of land on which to erect a pyramid temple remained outstanding before BOP prison officials, Plaintiff's request for relief was premature).

any further detail about his alleged requests - such as when they were made. Moreover, even assuming that Plaintiff had made such requests and that they were denied, Plaintiff provides no information regarding any further steps by him to obtain the form. For example, he has not presented requests for administrative remedy on this issue, nor has he apparently brought this to the attention of the Warden or other staff at FCC Yazoo City.[22] Thus, Defendants are entitled to summary judgment on this claim.

Confiscation of Legal Papers

Plaintiff alleges that Defendants Southerland, Varnado and Jackson confiscated his legal papers (pertaining to a post-conviction motion) and did not return them, again in violation of 8 U.S.C. § 1401 and the Fourth Amendment, and that Defendants Lappin and Pearson "personally authorized" these actions. *See* Complaint Count IV.

Defendants Pearson and Lappin deny that they had any personal involvement in the alleged confiscation of Plaintiff's legal papers and deny personally authorizing any such action. *See* Pearson Decl. ¶ 5; Lappin Decl. ¶ 5. As for the other Defendants, as discussed *supra*, Mr. Jackson avers that in May 2008, he participated in a "shakedown search," along with other staff, of inmates' living quarters looking for excess institution clothing, but did not recall confiscating any property from Plaintiff. Mr. Varnado states that he participated with other staff in a "shakedown search" of Plaintiff's living unit in May 2008, but neither searched Plaintiff's area nor confiscated any of Plaintiff's property. *See* Varnado Decl. ¶ 2. Defendant Southerland does not recall any search of Plaintiff's living area involving the confiscation of his slippers and legal papers. *See* Southerland Decl. ¶¶ 4-5.

In response to these averments, Plaintiff merely restates his earlier allegations in a Declaration and also claims that he will show that Defendants confiscated his property "at trial."

---

[22] Indeed, the first time this claim was raised by Plaintiff was in response to Defendants' Motion for Summary Judgment.

*See* Response [22] at 3; Wall Decl. ¶¶ 4, 9-10.  Even assuming that these statements are

sufficient to create a genuine issue of material fact on the issue of whether the takings actually

occurred, Plaintiff's claim would still fail.  As discussed *supra*, random, unauthorized

deprivations of property (whether negligent or intentional) by prison officials do not violate due

process where there is an adequate post-deprivation remedy available.  *Daniels*, 474 U.S. 327;

*Hudson*, 468 U.S. at 533.  Plaintiff has not alleged that the deprivations were made in

accordance with any policy, practice or custom or were in any other way "authorized."  *See*

*Smith*, 2009 WL 1262424, at * 1.  Moreover, there are adequate remedies available under the

FTCA as well as the BOP grievance procedure.  *See Gordon*, 172 Fed. Appx. at 567; *Williams*,

2008 WL 112106, at  * 2 (citations omitted).

Finally, to the extent that Plaintiff is claiming that this alleged confiscation of his legal

papers constituted a denial of legal access, as discussed *supra*, in order to prevail on such a

claim Plaintiff must show "actual prejudice with respect to contemplated or existing litigation."

*Lewis*, 518 U.S. at 349-51; s*ee also Donnelly*, 95 Fed. Appx. at 703; *Cartner*, 89 Fed. Appx. at

442.  Plaintiff has failed to make this showing, let alone even allege that he was prejudiced by

the alleged confiscation of his legal papers, and for this reason as well, this claim should be

dismissed.

<u>Interference with Legal Telephone Calls</u>

Plaintiff claims that Defendant Jackson refused to allow Plaintiff to make a legal call,

and Dalton "obstructed" a phone call between Plaintiff and his attorney by "heckling him" and

talking to him while he was on the phone, in violation of due process and his First Amendment

right to privacy.  *See* Complaint Count V.

Jackson avers that Plaintiff never asked him to provide him with a legal telephone call

and he never denied Plaintiff a legal telephone call.[23] *See* Jackson Decl. ¶ 4. Nevertheless, Plaintiff apparently did have the legal call in question on or about July 20, 2008, and Dalton assisted Plaintiff with that call. However, Dalton denies obstructing the call by talking to Plaintiff or "heckling" him. *See* Dalton Decl. ¶ 2.

In response to the Motion for Summary Judgment, Plaintiff reiterates that Jackson denied him a legal call, that Defendant Dalton "heckled and intercepted" his phone call, and argues that because Dalton admits that he assisted Plaintiff with the call, he therefore admits to eavesdropping and intercepting it.[24] Plaintiff also contends that the alleged heckling "resulted in a loss to his appeal from his § 2255 motion." *See* Plaintiff's Response [22] at 3, 9. Specifically, Plaintiff claims that his counsel was unable to provide him with effective assistance because Plaintiff was continually interrupted while attempting to explain that he was actually innocent of the charges "because Banks[25] subpoenaed his work records which showed that Wall had been at work at the time the crimes were committed." *See id.* at 9. Plaintiff further claims that Jackson's alleged refusal to provide him with a phone call prejudiced him because he was unable to communicate his actual innocence to his attorney. *See id.*

Thus, Plaintiff apparently is asserting a denial of access to the courts claim. However, as discussed *supra*, in order to prevail on such a claim, Plaintiff must show an "'actual injury' -

---

[23] On or about November 12, 2008, Jackson received a phone call from a staff member at a New York state family court asking to speak with Plaintiff. As Plaintiff was unavailable at that time, the call could not take place. However, Jackson explained the procedures for how to arrange a telephone call and plans were made for the call to take place in the future. *See* Jackson Decl. ¶ 5; Exh. 11 to Defs' Motion for Summary Judgment. On December 10, 2008, Jackson placed the call to the family court and provided the telephone to Plaintiff. *See* Jackson Decl. ¶ 5. This is the subject of Plaintiff's claim, discussed *infra*, that Jackson and Dalton intercepted and monitored his legal telephone call. *See* Second Supp. Addition [17] to Complaint at ¶ 2.

[24] *See also* Wall Decl. ¶ 9 ("Dalton did indeed heckle and obstruct and monitor and intercept my legal call.").

[25] Presumably, Plaintiff is referring to fellow prisoner Frederick Banks, referred to in footnote 1, *supra*.

that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'" *Lewis*, 518 U.S. at 349-51; s*ee also Donnelly*, 95 Fed. Appx. at 703; *Cartner*, 89 Fed. Appx. at 442. Plaintiff has failed to make this showing. First, Plaintiff pled guilty to the crime at issue and thereby waived his right to appeal or collaterally attack his conviction or sentence, including the right to file a section 2255 motion (except for claims regarding whether his guilty plea was knowingly, voluntarily or competently made). *See* Exh. 1 to Defs' Reply [27]. As the court noted in its opinion denying Plaintiff's section 2255 motion, "[i]n addition to the evidence in the government's possession...Petitioner admitted his guilt on several occasions - to the FBI, in his plea agreement, at the plea hearing, and at the sentencing hearing. Petitioner was specifically warned not to plead guilty unless he was, in fact, guilty." *See id.*

Nevertheless, Plaintiff's claim of actual innocence *was* asserted in his section 2255 motion and *wa*s reviewed by the court. Indeed, in its opinion the court specifically mentioned that Plaintiff had submitted an additional affidavit on June 16, 2008 in an attempt to demonstrate actual innocence, to which he had attached two exhibits - his work records and "Internet Explorer" history - "to demonstrate that he was not at home at the time that images were downloaded from his computer." *See id.* Plaintiff has failed to establish that the work records he refers to in this claim are different than those that he apparently submitted to the court in support of his section 2255 motion. Moreover, even if they are different, Plaintiff has failed to established that they would have resulted in a different outcome.

Based on the foregoing, Defendants are entitled to summary judgment on this claim.

Denial of Paper and Envelopes

Plaintiff claims that Defendant Jackson refused to provide paper and envelopes to Plaintiff so that he could pursue legal actions, in violation of Plaintiff's due process and Sixth Amendment rights, yet he provided these items to other inmates "of different classes," thereby

violating Plaintiff's Equal Protection rights.  *See* Complaint Count VI.

Defendant Jackson avers that there was a time when paper and envelopes were not available at FCC Yazoo City and he told Plaintiff that when they were available, he would receive some.  Defendant Jackson avers that when writing paper and envelopes became available, Plaintiff was given some.  *See* Declaration of Phillip C. Jackson (Exh. 21 to Defs' Motion for Summary Judgment) ¶ 6.  In response to the Motion for Summary Judgment, Plaintiff re-states his allegation that Jackson denied him paper and envelopes and states, in a conclusory fashion, that the products were available in the institution.[26]  *See* Response [22] at 3; *see also* Wall Decl. ¶ 5 (stating that "[o]n all occasions except one Jackson refused to provide me with paper.").  Again, "a plaintiff cannot defeat a motion for summary judgment by merely restating conclusory allegations contained in his complaint...."  *Paul Kadair,* 694 F.2d at 1030.

At any rate, even if Plaintiff had established that Jackson had wrongfully denied him paper and envelopes, he has failed to show "'actual injury' - that is, 'actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim.'"  *Lewis*, 518 U.S. at 349-51(citation omitted); s*ee also Donnelly*, 95 Fed. Appx. at 703; *Cartner*, 89 Fed. Appx. at 442; *Richards*, 115 Fed. Appx. At 677.  Thus, for this reason as well, Defendant Jackson is entitled to summary judgment on this claim.

As for the Equal Protection claim, Plaintiff must show that he was "intentionally discriminated against...because of membership in a protected class," or "has been intentionally

---

[26] Envelopes and paper were available for purchase from the commissary and, in fact, Plaintiff purchased envelopes on June 5, 2008. *See* Exhs. 14 & 15 to Defs' Motion for Summary Judgment. Plaintiff has had plenty of resources with which to buy envelopes and paper during the relevant time period, but apparently he has chosen to spend his money on other commissary items. *See* Exhs. 14, 15 & 16 to Defs' Motion for Summary Judgment.  Likewise, the docket of this court is filled with lawsuits filed by this Plaintiff (in addition to the instant lawsuit) - which belies any claim that Plaintiff is unable to access the court system. *See*, *e.g.*, Civil Action Nos. 5:08cv234; 5:08cv261; 5:08cv277; 5:08cv313; 5:08cv319; 5:08cv338; 5:09cv50; 5:09cv56; 5:09cv88

treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Nance v. New Orleans & Baton Rouge Steamship Pilots' Ass'n*, 174 Fed. Appx. 849, 854 (5th Cir. Apr. 10, 2006) (citations omitted). Alternatively, Plaintiff may show that a government policy or procedure was selectively enforced against him, by showing that "the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Id.* (citation omitted).

In response to the Motion for Summary Judgment, Plaintiff alleges that Jackson refused to provide him with envelopes because he is an "Indian," but that he provided envelopes to other white and black inmates. *See* Response at 10. In his Declaration, Plaintiff summarily states: "Jackson during the relevant times provided paper to other inmates of different classes but refused to provide it to me including envelopes." *See* Wall Decl. ¶ 5. Thus, rather than provide competent summary judgment evidence to make the required showing, Plaintiff "merely makes unsubstantiated, vague assertions that he and unspecified others received unequal treatment." *Nance*, 174 Fed. Appx. at 854. This is not sufficient for Plaintiff to meet his burden in opposing summary judgment. *See Ragas*, 136 F.3d at 458; *Paul Kadair,* 694 F.2d at 1030; *Fontenot*, 780 F.2d at 1195. Accordingly, Defendant is entitled to summary judgment on this claim.

Air Conditioning Conspiracy/Denial of Medical Treatment

Plaintiff alleges that Defendants Jackson, Randle, Dalton and Pearson "removed the plugs from the units and otherwise plugged them up so that [Plaintiff] could not plug in a fan then they turned off the air conditioning to heat up the unit to a boiling degree. Once [Plaintiff] was asleep and above the covers they suddenly turned on the air conditioning full blast, this continuous change in temperature night after night caused black mold spores to be released from the uncleaned vents infecting [Plaintiff] with a deep bloody cough that was never treated in violation of the Eighth Amendment." *See* Complaint Count VII.

Defendants aver that they do not control the temperatures in the housing units at FCC

Yazoo City; rather, temperatures are controlled by the Facilities Department, in accordance with relevant BOP policy.[27] When temperatures seem either too hot or too cold, Facilities Department staff are called and asked to make an adjustment. They explain that the reason live electric plugs were removed from certain areas at FCC Yazoo City was because inmates were using "stingers"[28] in those plugs, thereby creating a fire hazard. *See* Pearson Decl. ¶ 6; Jackson Decl. ¶ 7; Dalton Decl. ¶ 3; Randle Decl. ¶ 3. Further, there were certain times during the summer of 2008 when the air conditioning system experienced some problems with broken "chillers" and as a consequence, the living units were hot at times until they were repaired. *See* Pearson Decl. ¶ 6.

In response to the Motion for Summary Judgment, Plaintiff merely argues that because Defendants are responsible for the conditions in the unit as BOP employees, pursuant to 18 U.S.C. § 4042,[29] a genuine issue of material fact is in dispute.[30] *See* Response [22] at 3-4.

---

[27] *See* PS P4200.00, Facilities Operations Manual (Exh. 10 to Defs' Motion for Summary Judgment).

[28] According to Defendants, a "stinger" is "an unauthorized, makeshift, electronic device used to heat water or food items.

[29] This statute sets forth the duties of the BOP, including "management and regulation of all Federal penal and correctional institutions" and "provid[ing] suitable quarters and...for the safekeeping, care and subsistence" of prisoners. *See* 18 U.S.C. §§ 4042(a)(1), (2). It does not address the responsibilities of individual BOP employees.

[30] Plaintiff also vaguely asserts that he "should be given leave to join the proper additional parties once discovery is conducted." *See* Response [22] at 3. However, Plaintiff also avers that Jackson, Dalton and Pearson are the proper parties "since they are at all times material [sic] responsible for the conditions in the unit...as BOP employees." Moreover, to the extent that this can be liberally construed as a request for a continuance pursuant Rule 56(f), such a request should be denied, as Plaintiff has not made the requisite showing. Rule 56(f) authorizes the court to "order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken" when "a party opposing the motion shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition...." Fed. R. Civ. P. 56(f). Because the party resisting summary judgment does not bear a heavy burden, he "must conclusively justify his entitlement to the shelter of Rule 56(f) by presenting specific facts explaining the inability to make a substantive response . . . and by specifically demonstrating

However, "a plaintiff cannot defeat a motion for summary judgment by merely restating conclusory allegations contained in his complaint," *Paul Kadair,* 694 F.2d at 1030, nor can he "discharge his burden by alleging legal conclusions." *Fontenot*, 780 at 1195 (5th Cir. 1986). Plaintiff has failed to meet his burden.

In addition, to the extent that Plaintiff is claiming that Defendants were involved in a conspiracy, Plaintiff's allegations clearly fall short. Conclusory allegations of a conspiracy are insufficient to state a constitutional claim. *Wilson v. Budney*, 976 F.2d 957, 958 (5th Cir. 1992). Further, the plaintiff must "prove an actual deprivation of a constitutional right; a conspiracy to deprive is insufficient." *Villanueva v. McInnis*, 723 F.2d 414, 418 (5th Cir. 1984); *see also Gillum v. City of Kerrville*, 3 F.3d 117, 123 (5th Cir. 1993). Plaintiff has not proven an actual deprivation of a constitutional right. Accordingly, this claim should be dismissed.

Finally, as for Plaintiff's claim that he was denied medical treatment, there is no indication in his medical records that he presented any medical complaints - whether of a bloody cough or otherwise - from the time he arrived at FCC Yazoo City on October 24, 2007 to the date this case was filed on September 5, 2008. *See* Exh. 10A to Defs' Motion for Summary Judgment; *see also* Declaration of Dr. Anthony Chambers, Clinical Director of FCC Yazoo City (Exh. 31 to Defs' Motion for Summary Judgment) ¶ 4. Plaintiff avers that he "presented a cop out to medical but was never scheduled for an appointment and thus was never treated." *See* Response [22] at 4. However, there are no doctors nor other medical personnel as named as Defendants in this action, and Plaintiff has not established that any of the non-medical Defendants in this action were in any way personally involved with denying him medical

---

how postponement of a ruling on the motion will enable him . . . to rebut the movant's showing of the absence of a genuine issue of fact." *Lee v. Stalder*, 223 Fed. Appx. 315, 319 (5th Cir. 2007) (internal citations and quotations omitted). "[I]t is not enough to 'rely on vague assertions that discovery will produce needed, but unspecified, facts.'" *Stearns Airport Equip. Co. v. FMC Corp.*, 170 F.3d 518, 535 (5th Cir. 1999) (citation omitted).

treatment.  Accordingly, Defendants are entitled to summary judgment on this claim.

Refusal to Provide Records

Plaintiff claims that Defendants Lappin and Black refused to provide records that Plaintiff had requested under the Privacy Act.  *See* Complaint Count VIII.

As discussed *supra*, it is well-settled that the Privacy Act, 5 U.S.C. §552a, does not provide a cause of action against individuals, only against government agencies.  *See Petrus*, 833 F.2d at 582; *Connelly*, 876 F.2d at 1215.  Thus, because the Privacy Act does not create a cause of action against Defendants Lappin and Black, they should be granted summary judgment on these claims.  *See Jacobs v. Reno*, 208 F.3d 1006, at * 1 (5th Cir. Jan. 20, 2000) (*per curiam*).

Opening of Legal Mail

Plaintiff alleges that "Unidentified "Defendants and supplemental Defendants" opened and copied his incoming legal mail in violation of due process and his constitutional right to privacy, as well as his right to legal access.  *See* Supp. Pleading [12] Count 1.

Plaintiff provides no specific information as to which Defendants allegedly opened and copied his mail, when this occurred, or any other details about these incidents.  More importantly, Plaintiff provides no information that would allow the court to even determine whether the mail in question was, in fact, legal.[31]  Plaintiff's wholly conclusory, unsubstantiated allegations are insufficient to withstand summary judgment and, accordingly, this claim should be dismissed.

Music/Movie Claims (Discrimination/Equal Protection)

---

[31] Although Plaintiff attaches envelopes as exhibits to his Declaration [24], he does not discuss them in the affidavits, nor do the envelopes have the required "special mail" marking to indicate that they contained legal mail.  In the absence of such markings, BOP regulations allow staff to treat the mail as general correspondence and open, inspect and read it. *See* 28 C.F.R. § 540.18.

Plaintiff claims that Defendant Bender "cancelled and obstructed a movie performance, refused to answer a cop out requesting Indie Rock music entertainment as a DJ night and did not otherwise provide the requested music while allowing other inmates and providing 'hip hop and R & B' music," and Defendant Richardson "failed to hold a promised band meeting to review the claims and possibly restart the band." As such, Plaintiff claims he was discriminated against on the basis of his religion, in violation of his due process and equal protection rights. *See* Supp. Pleading [12] Count 2. As noted *supra*, the individuals against whom these claims are being asserted are not Defendants in this action. Accordingly, these claims should be dismissed.

Interception and Monitoring of Legal Phone Calls

Plaintiff alleges that Defendants Jackson and Dalton intercepted and monitored Plaintiff's legal telephone calls, in violation of Title III of the Omnibus Crime Control and Safe Streets Act of 1968, as amended by the Electronic Communications Privacy Act of 1968, 18 U.S.C. § 2510, *et seq. See* Second Supp. Addition [17] to Complaint at ¶ 2.

Mr. Jackson avers that on or about November 12, 2008, he received a phone call from a staff member at a New York state family court asking to speak with Plaintiff. As Plaintiff was unavailable at that time, the call was not able to take place. However, Jackson explained the procedures for how to arrange a telephone call and arrangements were made for the call to take place in the future. *See* Jackson Decl. ¶ 5; Exh. 11 to Defs' Motion for Summary Judgment. On December 10, 2008, Jackson placed the call to the family court and provided the telephone to Plaintiff. *See* Jackson Decl. ¶ 5. Jackson remained in the room during the call, but avers that he did not monitor or record it. No one (including Plaintiff or his attorney) advised Jackson that the call was confidential or that he should not remain in the room. *See id.* Mr. Dalton avers that at the time of this phone call he was no longer Acting Unit Manager over Plaintiff's living unit, and he had no personal involvement in this phone call. Dalton avers that he did not intercept

and monitor such a telephone call.  *See* Dalton Decl. ¶ 4.

Plaintiff offers no further evidence to support these claims.  Accordingly, Plaintiff having failed to meet his burden, Defendants are entitled to summary judgment on this claim.

## RECOMMENDATION

For the reasons stated above, it is the recommendation of this court that Plaintiff's Motion for Summary Judgment [22] be denied, that Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment [20] be granted, and that Plaintiff's claims against Defendants be dismissed with prejudice.[32]

## NOTICE OF RIGHT TO OBJECT

In accordance with the rules and 28 U.S.C. § 636(b)(1), any party within ten days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the judge, the magistrate judge and the opposing party.  The District Judge at the time may accept, reject or modify in whole or part, the recommendations of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions.  The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendations contained within this report and recommendation within ten days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court to which the party has not objected.  *Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1428-29 (5th Cir. 1996).

---

[32] Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise to establish a claim, then the defendant[s][are] entitled to dismissal on that basis."  *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999).   Thus, because the court has found that Plaintiff has failed to establish his claims against Defendants, it need not reach the question whether Defendants are entitled to qualified immunity.  *Wells*, 45 F.3d at 93.

THIS, the 24th day of July, 2009.

s/ Michael T. Parker
United States Magistrate Judge